FREEDMAN + TAITELMAN, LLP
Sean M. Hardy (SBN 266446)
smhardy@ftllp.com
1901 Avenue of the Stars, Suite 500
Los Angeles, CA 90067
Telephone: (310) 201-0005

*Attorneys for Defendants,*
NORDSTROM, INC. and MIMI CHICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANDARD FABRICS INTERNATIONAL, INC., a California Corporation | Case No. 2:17-cv-04811-SJO-E |
| | [*Hon. S. James Otero, Courtroom 10C*] |
| Plaintiff, | **DEFENDANT MIMI CHICA'S NOTICE OF MOTION AND MOTION TO DISQUALIFY DONIGER/BURROUGHS APC; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| NORDSTROM, INC., a Delaware Corporation; MIMI CHICA, a California Corporation; and DOES 1 through 10, inclusive, | |
| | Complaint Filed: June 29, 2017 |
| Defendants. | Hearing Date:    December 26, 2017 |
| | Hearing Time: 10:00 a.m. |

TO PLAINTIFF AND TO ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 26, 2017, at 10:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled Court, located at the First Street Courthouse, Courtroom 10C, Tenth Floor, 350 West 1st Street, Los Angeles, California 90012, Defendant Mimi Chica will and hereby does move, for an order disqualifying the law firm of Doniger/Burroughs APC ("Doniger Burroughs") from representing Plaintiff Standard Fabrics International, Inc. ("Standard Fabrics") in this action.

By virtue of its concurrent representation of Mimi Chica in *Design Collection, Inc. v. Forever 21, Inc.* (Case No. 2:17-cv-01674 SJO) (the "Related Case"), a copyright infringement action pending before this very Court, Doniger Burroughs has a conflict of interest that precludes it from representing Plaintiff Standard Fabrics in this action in which it is adverse to Mimi Chica. *See Flatt v. Superior Court*, 9 Cal.4th 275 (1994). Furthermore, as a matter of law, Doniger Burroughs cannot cure the conflict, which Mimi Chica has not agreed to waive, by unilaterally terminating its relationship with Mimi Chica. *See Concat LP v. Unilever*, *PLC*, 350 F.Supp.2d 796 (N.D. Cal. 2004); *Flatt*, 9 Cal.4th at 288; *Truck Ins. Exch. v. Fireman's Fund Ins. Co.*, 6 Cal.App.4th 1050, 1060 (1992). Disqualification of Doniger Burroughs from this action is therefore warranted.

Doniger Burroughs blatantly violated California's "hot potato" rule by unilaterally "terminating" Mimi Chica as a client, after acknowledging that an impermissible conflict of interest exists due to its concurrent representation of Mimi Chica and Plaintiff Standard Fabrics. This Court does not condone such self-serving tactics by disloyal attorneys, and does not hesitate to disqualify such counsel for violation of the "hot potato" rule. *See State Comp. Ins. Fund v. Drobot,* 192 F. Supp. 3d 1080, 1114-15 (C.D. Cal. 2016); *W. Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F. Supp. 3d 1074, 1085 (C.D. Cal. 2015).

Even if Mimi Chica were deemed a former client of Doniger Burroughs, disqualification is mandatory because law firms may not represent clients with adverse interests in successive representations if there is a "substantial relationship" between the two representations. *Flatt*, 9 Cal.4th at 283-284; *Trone v. Smith*, 621 F.2d 994, 1000 (9th Cir. 1980). Here, in the Related Case, Doniger Burroughs rendered legal advice to Mimi Chica related to Mimi Chica's defenses against counterclaims for copyright infringement and vicarious/contributory infringement of a fabric pattern – the central issues in the instant case. Having

rendered this advice and gained client confidences from Mimi Chica on these critical issues, Doniger Burroughs may not continue to represent Plaintiff Standard Fabrics in this litigation against it.  Indeed, this Court has previously disqualified Doniger Burroughs on such grounds.  *ITC Textile v. J.C. Penney Co.*, No. CV 12-2975-DMG (FFMx), 2013 U.S. Dist. LEXIS 198580, at *1 (C.D. Cal. Dec. 6, 2013).

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declarations of Paul Spoleti and Sean M. Hardy and exhibits thereto, the Request for Judicial Notice, and such other documents and argument as may be submitted at or before the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 10, 2017.

Dated:  November 21, 2017          FREEDMAN + TAITELMAN, LLP


                                    /s/ *Sean M. Hardy*
                                   Sean M. Hardy
                                   *Attorneys for Defendants,*
                                   NORDSTROM, INC. and
                                   MIMI CHICA

MOTION TO DISQUALIFY DONIGER/BURROUGHS APC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION .............................................................................. 1

II.    STATEMENT OF FACTS .................................................................. 3

III.   CALIFORNIA LAW PROVIDES THE LEGAL STANDARD FOR THIS MOTION ............................................................................................. 6

IV.   DONIGER BURROUGHS MUST BE DISQUALIFIED FROM PROSECUTING THIS LAWSUIT AGAINST MIMI CHICA .............................. 6

      A.   An Attorney-Client Relationship was Formed between Doniger Burroughs and Mimi Chica ............................................................. 6

      B.   Disqualification Is Mandated by California's Per Se Rule Forbidding Concurrent Representation of Clients with Adverse Interests ........................ 8

      C.   Doniger Burroughs's Belated Attempt to Cure the Conflict by Claiming Mimi Chica Is a "Former" Client Is Insufficient to Prevent Disqualification ............................................................................ 11

      D.   Even If Mimi Chica Is Considered a Former Client, Disqualification  Is Mandatory Because Doniger Burroughs's Work on Behalf of Mimi Chica Substantially Relates to the Central Issues in This Case ............................. 13

      E.   Mimi Chica Did Not Provide its Informed Written Consent to Waive the Current Conflict ...................................................................... 17

      F.   The Balancing of Interests Confirms That Disqualification Is Appropriate in This Case ................................................................ 17

V.    CONCLUSION ............................................................................. 20

# **TABLE OF AUTHORITIES**

**Cases**

*Advanced Messaging Techs., Inc. v. EasyLink Servs. Int'l Corp.*,
913 F.Supp.2d 900, 906 (C.D. Cal. 2012) ................................................. 6

*American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*,
96 Cal.App.4th 1017, 1037 (2002) ......................................................... 12

*Anderson v. Eaton*,
211 Cal. 113, 116 (Cal. 1930) ................................................................. 8

*Baytree Capital Associates, LLC v. Quan*,
No. CV 08-2822 CAS, 2008 WL 3891226 at *6 (C.D. Cal. Dec. 18, 2008) .... 10, 18

*Beery v. State Bar*,
43 Cal. 3d 802, 811 (1987) ....................................................................... 7

*Beltran v. Avon Prods., Inc.*,
867 F.Supp.2d 1068, 1076-77 (C.D. Cal. 2012) ................................... 17

*Bernstein v. State Bar*,
50 Cal. 3d 221 (1990) ............................................................................... 7

*Blue Water Sunset, LLC v. Markowitz*,
192 Cal.App.4th 477, 486–87 (2011) ..................................................... 9

*Burnett v. Rowzee*,
No. SACV07-641 DOC (ANX), 2007 WL 2767936, at *3 (C.D. Cal. Aug. 13,
   2007) ..................................................................................................... 17

*Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*,
264 F.Supp.2d 914, 919 (N.D. Cal. 2003) .............................................. 8

*Concat LP v. Unilever, PLC*,
350 F.Supp.2d 796, 822 (N.D. Cal. 2004) ............................................ 10

*Elan Transdermal*,
809 F.Supp. at 1385, 1389-91 ......................................................... 14, 15

*Flatt v. Superior Court*,

9 Cal.4th 275, 285 (1994) ............................................................................ Passim

*Fujitsu Ltd. v. Belkin Int'l, Inc.*,

No. 10-CV-03972-LHK, 2010 WL 5387920 at *7 (N.D. Cal. Dec. 22, 2010) ....... 11

*Gilbert v. Nat'l Corp. for Housing P'ships*,

71 Cal.App.4th 1240, 1253 (1999) .......................................................... 8

*Gonzalez v. Kalu*,

140 Cal.App.4th 21, 30-31 (2006) ........................................................ 12

*H.F. Ahmanson & Co. v. Salomon Bros., Inc*.,

229 Cal.App.3d 1445, 1452 (1999) ........................................................ 14

*Henriksen v. Great Am. Sav. & Loan*,

11 Cal.App.4th 109, 113 (1992) ............................................................ 13

*Hernandez v. Paicius*,

109 Cal. App. 4th 452 (2003) ................................................................ 19

*In re Cnty. of L.A.*,

223 F.3d 990, 995 (9th Cir. 2000) ......................................................... 6

*ITC Textile v. J.C. Penney Co.*,

No. CV 12-2975-DMG (FFMx), 2013 U.S. Dist. LEXIS 198580, at *1 (C.D. Cal.

    Dec. 6, 2013) ..................................................................................... 15

*Jessen v. Hartford Cas. Ins. Co.*,

111 Cal.App.4th 698, 713 (2003) .......................................................... 15

*Jun Ki Kim v. True Church Members of Holy Hill Community Church*,

236 Cal. App. 4th 1435 (2015) ............................................................. 18

*Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.*,

36 Cal.App.4th 1832, 1838 (1995) ........................................................ 18

*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys., Inc.*,

20 Cal.4th 1135, 1146 (1999) ......................................................... 7, 8, 9, 10

MOTION TO DISQUALIFY DONIGER/BURROUGHS APC

*People v. Freeman*,

47 Cal. App. 4th 993 (2010) .................................................................................19

*Picker Int'l, Inc. v. Varian Assocs.*,

869 F.2d 578, 581-82 (Fed. Cir. 1989) ................................................................11

*State Comp. Ins. Fund v. Drobot*,

192 F. Supp. 3d 1080, 1114-15 (C.D. Cal. 2016) ...........................................13, 20

*Teradyne, Inc. v. Hewlett-Packard Co.*,

NO. C-91-0344 MHP ENE, 1991 WL 239940 at *2 (N.D. Cal. June 6, 1991)..9, 10

*Trone v. Smith*,

621 F.2d 994, 1000 (9th Cir. 1980) .......................................................................13

*Truck Ins. Exchange v. Fireman's Fund Ins. Co.*,

6 Cal.App.4th 1050, 1059-60 (1992)...........................................................9, 11, 18

*U.S. v. Cline*,

2013 WL 215644 (W.D. Va. Apr. 19, 2013).........................................................19

*Unified Sewerage Agency of Washington County, Or. v. Jelco*,

646 F.2d 1339, 1345 n.4 (9th Cir. 1981) ...............................................................11

*Visa U.S.A., Inc. v. First Data Corp.*,

241 F.Supp.2d 1100, 1106 (N.D. Cal. 2003).........................................................17

*W. Sugar Coop. v. Archer-Daniels-Midland Co.*,

98 F. Supp. 3d 1074, 1085 (C.D. Cal. 2015).........................................................12

*Waggoner v. Snow, Becker, Kroll, Klaris & Krauss*,

991 F. 2d 1501 (9th Cir. 1993) ...............................................................................7

*White v. Experian Info. Solutions*,

993 F.Supp.2d 1154, 1161 (C.D. Cal. 2014).....................................................9, 18

**Rules**

Cal. R. Prof. Conduct 3-310(C)........................................................................9, 17

Cal. R. Prof. Conduct 3-310(E) .....................................................................13, 17

MOTION TO DISQUALIFY DONIGER/BURROUGHS APC

1

**Treatises**

Restatement (Third) of Law Governing Law § 132, cmt c (2000) ........................12

*Triangular Lawyer Relationships: An Exploratory Analysis*, 1 Geo. J. Legal Ethics
15, 21 (1987) ..........................................................................................................20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO DISQUALIFY DONIGER/BURROUGHS APC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In the case at bar, Plaintiff Standard Fabrics, Inc. ("Standard Fabrics") has sued Mimi Chica for alleged copyright infringement and vicarious/contributory copyright infringement of a fabric pattern.  The law firm of Doniger/Burroughs APC ("Doniger Burroughs") is prosecuting this case against Mimi Chica on behalf of Plaintiff Standard Fabrics.  Through the instant Motion, Mimi Chica seeks to disqualify Doniger Burroughs from representing Plaintiff Standard Fabrics in this action.  In June 2017, Mimi Chica retained Doniger Burroughs as its attorney to defend against counterclaims for copyright infringement and vicarious/contributory copyright infringement in *Design Collection, Inc. v. Forever 21, Inc.* (Case No. 2:17-cv-01674 SJO) (the "Related Case").  Despite representing Mimi Chica in the Related Case, Doniger Burroughs proceeded to file the instant lawsuit against it, and has insisted on prosecuting this case against Mimi Chica with full awareness of the conflict of interest.  Mimi Chica's rightful expectation, shared by clients everywhere, that its counsel uphold its twin duties of loyalty and confidentiality, is directly challenged by Doniger Burroughs' prosecution of this action against its own client.

California law mandates that Doniger Burroughs be disqualified.  Mimi Chica's attorney-client relationship with Doninger Burroughs requires the firm to abide by strict ethical duties prohibiting it from taking a position adverse to Mimi Chica without the company's informed, written consent. It is a cardinal rule in California that a law firm cannot sue a current client even in unrelated matters without the client's informed consent.  Despite this, Doninger Burroughs has continued to prosecute this copyright infringement action against Mimi Chica—a case that hardly could be more adverse to Mimi Chica.  Doniger Burroughs never sought—let alone received—a conflict waiver from Mimi Chica relative to its concurrent representation of Plaintiff Standard Fabrics. In fact, Doniger Burroughs

MOTION TO DISQUALIFY DONIGER/BURROUGHS APC

did not even alert Mimi Chica as to this conflict of interest until July 13, 2017 – weeks after it been retained as Mimi Chica's attorneys and after confidential information had been disclosed.  And Doniger Burroughs's July 13, 2017 Email to Mimi Chica took no steps to address or rectify the egregious conflict of interest. Instead, Doniger Burroughs attempted to unilaterally drop Mimi Chica as a client—a further breach of the duty of loyalty that is expressly prohibited by law.

Where, as here, a law firm engages in the simultaneous representation of clients with adverse interests, California law imposes a *per se* rule mandating that the firm be disqualified unless both clients give their informed, written consent. The law expressly does *not* allow law firms to evade this duty by unilaterally withdrawing from the representation of the less-favored client.

Disqualification is also mandated by California Rules of Professional Conduct, Rule 3-310(E), which flatly prohibits a lawyer from accepting employment adverse to a client or former client, without the consent of the client, where the lawyer has obtained confidential information material to the employment.  Here, even if Mimi Chica were deemed a former, instead of current, client, Doniger Burroughs attorneys' past representation of Mimi Chica would mandate the firm's disqualification. Law firms may not engage in successive representation of adverse clients if a "substantial relationship" exists between the two representations.  Here, the allegations against Mimi Chica in the Related Case and the instant care are virtually identical: that Mimi Chica engaged in direct and vicarious copyright infringement by copying an existing fabric pattern. Mimi Chica disclosed confidential information to Doniger Burroughs regarding its business practices and internal procedures for developing and creating fabric patterns – information directly relevant to this case.  Further, Doniger Burroughs provided legal advice to Mimi Chica relative to its defenses to these copyright infringement claims.  Not only are the issues in both cases substantially related, but both cases are pending before this very Court.  Disqualification is required.

## II.   <u>STATEMENT OF FACTS</u>

Mimi Chica is a garment manufacturer in the fashion industry, and sells garments to retailers throughout the United States.  (Declaration of Paul Spoleti ["Spoleti Decl."], ¶ 3.)  Among other things, Mimi Chica has a design division at its Los Angeles office, in which Mimi Chica's artists and designers create designs and fabric patterns which are later used in garments manufactured by Mimi Chica. *Id.*  On April 10, 2017, Forever 21, Inc. filed its Counterclaim in the Related Case, alleging counterclaims for: (1) copyright infringement; and (2) vicarious and/or contributory infringement.  *See* Request for Judicial Notice ("RJN"), Ex. A.  On June 16, 2017, this Court entered an order naming Mimi Chica as a "doe" counterclaim defendant in the Related Case.  *See* RJN, Ex. B.  The Counterclaim in the Related Case alleges that Mimi Chica infringed Forever 21, Inc.'s copyright in a fabric pattern by "creating, making, and/or developing directly infringing and/or derivative works" from said copyright and by "producing, distributing and/or selling garments" which infringe said copyright.  *See* RJN, Ex. A, ¶ 21. The Counterclaim also alleges that Mimi Chica "knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and/or subsequent sales of garments" featuring Forever 21, Inc.'s copyright.  *See* RJN, Ex. A, ¶ 27.

Shortly after June 16, 2017, Mimi Chica was served with a summons and counterclaim in the Related Case.  (Spoleti Decl., ¶ 4.)  On June 28, 2017, Mimi Chica's President and CEO, Paul Spoleti, had a telephonic legal consultation with attorney Stephen Doniger of Doniger Burroughs, with respect to that firm's defense of Mimi Chica in the Related Case. (Spoleti Decl., ¶ 5.)  Spoleti engaged in this consultation with the expectation that he would receive legal advice from Doniger Burroughs regarding the defense of Mimi Chica in the Related Case.  *Id.* During this June 28, 2017, legal consultation with Doniger Burroughs, Spoleti

divulged confidential business information. (Spoleti Decl., ¶ 6.)   Spoleti only disclosed this confidential business information because he understood and expected that an attorney would hold such information in strict confidence.  *Id.*

Spoleti disclosed the full spectrum of Mimi Chica's confidential procedures regarding the creation, development, and distribution of its fabric patterns. (Spoleti Decl., ¶ 7.) Spoleti disclosed incidents in which Mimi Chica had previously been accused of copyright infringement, which are not known to the public, and the facts and circumstances underlying such allegations.  *Id.*  He also discussed with Doniger Burroughs the policies and procedures that Mimi Chica had in place regarding the registration of copyrights.  *Id.*  Spoleti told Doniger Burroughs about Mimi Chica's procedures for the creation of its fabric patterns, as well as Mimi Chica's business relationships with retailers and vendors in the garment industry.  *Id.*  Spoleti also discussed the financial condition of Mimi Chica.  *Id.*

During this June 28, 2017 consultation with Doniger Burroughs, Spoleti specifically consulted with Doniger Burroughs for legal advice regarding the allegations of copyright infringement that had been leveled against Mimi Chica in the Related Case, as well as how Mimi Chica could employ best practices to guard against accusations of copyright infringement in the future.  (Spoleti Decl., ¶ 8.) Mr. Doniger provided Mimi Chica with legal advice regarding its defenses against the copyright infringement allegations in the Related Case.  *Id.* Additionally, Mr. Doniger provided Mimi Chica with legal advice as to how it could change its business practices to better guard against copyright infringement lawsuits in the future.  *Id.*

Spoleti was relieved and pleased with the legal advice Mimi Chica had received from Doniger Burroughs, and eagerly asked the law firm to formally represent Mimi Chica. (Spoleti Decl., ¶ 9.)  Mr. Doniger told Spoleti that, based

on the facts disclosed during their consultation, Doniger Burroughs would be happy to defend Mimi Chica in the Related Case. *Id.* Doniger Burroughs sent Mimi Chica a retainer agreement on June 29, 2017, which Mimi Chica promptly executed and returned. (Spoleti Decl., ¶¶ 10-11, Exs. 1-2.) All the information Spoleti shared with Doniger Burroughs is confidential, and integral to how Mimi Chica conducts its business. (Spoleti Decl., ¶ 13.) Spoleti believed at all times that everything he, on behalf of Mimi Chica, discussed with Doniger Burroughs was confidential. *Id.* Spoleti divulged these confidences to Doniger Burroughs only because Mimi Chica was seeking legal advice. *Id.*

Two weeks later, on July 13, 2017, Doniger Burroughs suddenly purported to terminate Mimi Chica as a client due to an "impermissible conflict of interest." (Spoleti Decl., ¶ 12, Ex. 3.) At no time did Mimi Chica agree to waive any conflict of interest with Standard Fabrics International, Inc. (Spoleti Decl., ¶ 14.) Mimi Chica considers Doniger Burroughs to still be Mimi Chica's attorney. *Id.* Mimi Chica never agreed or consented to Doniger Burroughs withdrawing as Mimi Chica's attorney. *Id.*

Upon learning that Doniger Burroughs had elected to sue Mimi Chica, its own client, on behalf of Standard Fabrics International, Inc., Spoleti became confused and afraid. (Spoleti Decl., ¶ 15.) Spoleti could not believe that Mimi Chica's own attorney would abandon it during a lawsuit, after it had obtained confidential business information, and then proceed to use that information against Mimi Chica in another copyright infringement lawsuit. *Id.* Doniger Burroughs knows about Mimi Chica's internal practices regarding the design of its fabric patterns, Mimi Chica's financial wherewithal, Mimi Chica's business relationships, and prior instances in which Mimi Chica had been accused of copyright infringement and how Mimi Chica resolved those disputes. *Id.* As a result of Doniger Burroughs's actions, Spoleti's faith in the legal profession has

1    been undermined to a great degree.  *Id.*

2           On August 10, 2017, Counsel for the parties met and conferred in person

3    pursuant to L.R. 7-3, prior to the filing of this Motion.  (Declaration of Sean M.

4    Hardy ["Hardy Decl."], ¶ 2.)  This meeting took place at the offices of Doniger

5    Burroughs located at 603 Rose Avenue in Venice, California 90291.  *Id.*  Mimi

6    Chica's counsel explained that Doniger Burroughs was required to withdraw as

7    counsel in this action, as Mimi Chica was a client of Doniger Burroughs in the the

8    Related Case.  *Id.*  Doniger Burroughs admitted that Mimi Chica was a client of

9    the firm, and had been "signed up," but stated that no conflict existed, as Doniger

10   Burroughs had properly terminated the attorney-client relationship.  *Id.*

## III.   CALIFORNIA LAW PROVIDES THE LEGAL STANDARD FOR THIS MOTION

13          Federal courts in California apply California state law in determining

14   matters of disqualification. *In re Cnty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000)

15   ("[W]e apply state law in determining matters of disqualification."); *Advanced

16   Messaging Techs., Inc. v. EasyLink Servs. Int'l Corp.*, 913 F.Supp.2d 900, 906

17   (C.D. Cal. 2012) ("The Ninth Circuit . . . has made clear that a federal court in

18   California must apply California law in a disqualification motion."). Indeed, the

19   Central District explicitly applies the State Bar Act, the Rules of Professional

20   Conduct of the State Bar, and the applicable judicial decisions thereto as to the

21   standards of professional conduct in the Central District. C.D. Cal. L.R. 83-3.1.2.

## IV.   DONIGER BURROUGHS MUST BE DISQUALIFIED FROM PROSECUTING THIS LAWSUIT AGAINST MIMI CHICA

### A.   *An Attorney-Client Relationship was Formed between Doniger Burroughs and Mimi Chica*

27          "When a party seeking legal advice consults an attorney at law and secures

28   that advice, the relation of attorney and client is established *prima facie*.  The

absence of an agreement with respect to the fee to be charged does not prevent the relationship from arising." *People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1148 (1999). It is well settled that the fiduciary relationship existing between lawyer and client extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result. *Beery v. State Bar,* 43 Cal. 3d 802, 811 (1987). A formal contract is not necessary to show that an attorney-client relationship has been formed. *Waggoner v. Snow, Becker, Kroll, Klaris & Krauss,* 991 F. 2d 1501 (9th Cir. 1993); *Bernstein v. State Bar*, 50 Cal. 3d 221 (1990).

Here, it is undisputed that Mimi Chica executed a retainer agreement with Doniger Burroughs. It is equally undisputed that Mimi Chica and Doninger Burroughs entered into an attorney-client relationship. In its July 13 Email, Doniger Burroughs improperly attempted to unilaterally terminate this attorney-client relationship. Even in doing so, Doniger Burroughs admits to Mimi Chica that it "agreed to represent you[.]" (Spoleti Decl., ¶ 12, Ex. 3.) During the meet and confer between counsel prior to filing this Motion, Doniger Burroughs likewise admitted that Mimi Chica was a client, but insisted that the relationship had been properly terminated.

More fundamentally, Mimi Chica initially consulted with Doniger Burroughs for the purpose of receiving legal advice relative to its defenses against the counterclaims in the Related Case. During this consultation, Doniger Burroughs rendered legal advice to Mimi Chica related to Mimi Chica's defenses against counterclaims for copyright infringement and vicarious/contributory infringement of a fabric pattern. This consultation occurred on June 28, 2017, prior to the commencement of the instant case. Thus, in addition to the signed retainer agreement and Doniger Burroughs's own admission, at this most basic level, an attorney-client relationship was formed.

### B. Disqualification Is Mandated by California's *Per Se* *Rule Forbidding Concurrent Representation of Clients with Adverse Interests*

Because Doniger Burroughs currently represents both Plaintiff Standard Fabrics and Mimi Chica, Doniger Burroughs is subject to mandatory, automatic disqualification under California law.[1]  Simply put, "an attorney (and his or her firm) cannot simultaneously represent a client in one matter while representing another party suing that same client in another matter." *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 264 F.Supp.2d 914, 919 (N.D. Cal. 2003); *see also Flatt v. Superior Court*, 9 Cal.4th 275, 285 (1994) ("Something seems radically out of place if a lawyer sues one of the lawyer's own present clients on behalf of another client.") (internal quotation marks omitted). To prevent this, California law imposes a *per se* bar forbidding attorneys from simultaneously representing clients with adverse interests without the client's informed, written consent. *Id.* This prohibition exists to ensure the attorney's undivided duty of loyalty, which requires it "to protect each of [its] clients in every possible way." *Gilbert v. Nat'l Corp. for Housing P'ships*, 71 Cal.App.4th 1240, 1253 (1999); *Anderson v. Eaton*, 211 Cal. 113, 116 (Cal. 1930); *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys., Inc.*, 20 Cal.4th 1135, 1146 (1999) (preserving the duty of loyalty by avoiding dual representation is crucial to "avoid

---

[1] This Memorandum employs the "concurrent representation" language of the cases for two reasons, despite Doniger Burroughs's unceremonious firing of Mimi Chica as a client on July 13, 2017.   First, there is no doubt that Doniger Burroughs simultaneously represented both Mimi Chica and Plaintiff Standard Fabrics before and after this lawsuit was filed.   Second, under California's "hot potato" rule, discussed *infra*, where a firm attempts to drop one of its clients, the *per se* disqualification rule still holds. Firms are not permitted to benefit from their "expedient of severing the relationship with the preexisting client," and if they try to, the cases hold, the court performs the same analysis as if no termination of the relationship had occurred. *Flatt*, 9 Cal.4th at 288.

undermining public confidence in the legal profession."); *see also* Cal. R. Prof. Conduct 3-310(C).

Since the client of one attorney in a law firm is considered the client of the entire firm, the prohibition on concurrent representation equally forbids attorneys within the same law firm from representing adverse clients. *See, e.g.*, *Flatt*, 9 Cal. 4th at 286 (approvingly citing case finding that where one attorney was a partner in two law firms, the two law firms could not represent adverse clients). This is true regardless of the size of the firm. *Truck Ins. Exchange v. Fireman's Fund Ins. Co.*, 6 Cal.App.4th 1050, 1059-60 (1992) ("summarily reject[ing]" the argument that the automatic disqualification rule is unduly "harsh when applied to large law firms organized into specialty practice groups representing institutional clients").

When a law firm engages in concurrent representation of clients with adverse interests, it is *presumed* that the firm's duty of loyalty has been breached, and absent each clients' informed written consent, the firm is *per se* disqualified. *Flatt*, 9 Cal.4th at 282–85 ("Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one."); *White v. Experian Info. Solutions*, 993 F.Supp.2d 1154, 1161 (C.D. Cal. 2014) ("The default rule for a concurrent conflict in California is automatic disqualification"); *see also Blue Water Sunset, LLC v. Markowitz*, 192 Cal.App.4th 477, 486–87 (2011) ("If an attorney simultaneously represents two clients with adverse interests, automatic disqualification is the rule in all but a few instances."). Disqualification is required regardless of whether the dual representations are related. *SpeeDee Oil*, 20 Cal.4th at 1147. The party seeking disqualification further need not show any "adverse effect" from the dual representation or that any client confidences are at risk of breach. *Teradyne, Inc. v. Hewlett-Packard Co.*, NO. C-91-0344 MHP ENE, 1991 WL 239940 at *2 (N.D. Cal. June 6, 1991). This is because the "paramount concern" in ensuring

that firms do not engage in concurrent representation is "the preservation of public trust in the scrupulous administration of justice and the integrity of the bar." *Baytree Capital Associates, LLC v. Quan*, No. CV 08-2822 CAS, 2008 WL 3891226 at *6 (C.D. Cal. Dec. 18, 2008). Nor do screening measures like ethical walls prevent disqualification, because the prohibition on dual representation arises from "the attorney's duty of loyalty, not confidentiality." *Concat LP v. Unilever, PLC*, 350 F.Supp.2d 796, 822 (N.D. Cal. 2004).

Here, Doniger Burroughs represents both Plaintiff Standard Fabrics and Mimi Chica. Mimi Chica never terminated its relationship with Doniger Burroughs and considers itself a current client of the firm. (Spoleti Decl., ¶ 14.) Despite this, Doniger Burroughs also represents Plaintiff Standard Fabrics in this litigation. There can be no dispute that Plaintiff Standard Fabrics and Mimi Chica are adverse to each other. Plaintiff Standard Fabrics has sued Mimi Chica for copyright infringement, seeking an injunction, damages, and attorney's fees. In its July 13 Email, Doniger Burroughs admits that this results in an impermissible conflict of interest.

The existence of the instant lawsuit is sufficient to require disqualification even if Doniger Burroughs' representation of Mimi Chica had nothing to do with this litigation and there was no risk of actual prejudice to Mimi Chica's interests. *SpeeDee Oil*, 20 Cal. 4th at 1147; *Teradyne*, 1991 WL 239940 at *2. In fact, however, Doniger Burroughs' representation of Mimi Chica is directly related to the issues in this lawsuit, particularly Doniger Burroughs attorneys' advice regarding Mimi Chica's defenses to copyright infringement claims, as well as how Mimi Chica could employ best practices to guard against future copyright infringement claims. *See* Spoleti Decl., ¶¶ 5-8, 15.) These issues lie at the heart of this lawsuit. Thus, although the *per se* automatic disqualification rule does not require a showing of prejudice, Mimi Chica nevertheless faces serious and

concrete prejudice by Doniger Burroughs's continued prosecution of this action against it.

### C.     Doniger Burroughs's Belated Attempt to Cure the Conflict by Claiming Mimi Chica Is a "Former" Client Is Insufficient to Prevent Disqualification

Nor is Doniger Burroughs excused from disqualification as a result of its unilateral attempt to terminate its relationship with Mimi Chica by claiming in its self-serving July 13 Email that it would no longer represent Mimi Chica in this matter due to an "impermissible conflict of interests." Concurrent representation conflicts **cannot be cured** by playing client "hot potato" and unilaterally converting a present client into a former one.   *Flatt*, 9 Cal.4th at 288 ("So inviolate is the duty of loyalty to an existing client that not even by withdrawing from the relationship can an attorney evade it."); *Fujitsu Ltd. v. Belkin Int'l, Inc.*, No. 10-CV-03972-LHK, 2010 WL 5387920 at *7 (N.D. Cal. Dec. 22, 2010) (same); *Truck Ins. Exchange*, 6 Cal.App.4th at 1057 (1992) (discussing the "hot potato" rule); *Picker Int'l, Inc. v. Varian Assocs.,* 869 F.2d 578, 581-82 (Fed. Cir. 1989) (MH&S's "unilateral attempt to terminate" client prior to merging with Jones Day "could not resolve the conflict problem posed by the impending merger"). The reason for this ban is obvious. If unilateral withdrawal were enough, "the challenged attorney could always convert a present client into a 'former client' by choosing when to cease to represent the disfavored client." *Truck Ins. Exchange,* 6 Cal.App.4th at 1057 (quoting *Unified Sewerage Agency of Washington County, Or. v. Jelco*, 646 F.2d 1339, 1345 n.4 (9th Cir. 1981) (internal quotation marks omitted). This would allow "such unethical behavior [as concurrent representation] to continue unrestricted." *Id*. at 1058 (internal quotation marks omitted).

In fact, attempting to unilaterally convert a current client into a former client "may itself be a breach of the duty of loyalty." *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton*, 96 Cal.App.4th 1017, 1037 (2002). Where an attorney who prematurely withdraws is "motivated by a desire to represent the new [adverse] client," the attorney has violated its "obligation of loyalty to the existing client." Restatement (Third) of Law Governing Law § 132, cmt c (2000) ("A premature withdrawal violates the lawyer's obligation of loyalty to the existing client and can constitute a breach of the client-lawyer contract of employment."). It is indeed hard to imagine an act more contrary to an attorney's duty of loyalty than dropping a client without consent in order to clear the way to represent the client's adversary.

Furthermore, while the rule is designed to apply equally regardless of the attorney's motivation, *Flatt*, 9 Cal.4th at 289, Doniger Burroughs's unceremonious dismissal of Mimi Chica was particularly offensive. The firm justified its termination by inserting the transparently self-serving statement that it had "not had any substantive discussions with your company." As made clear below, not only is this statement simply not true, but it is irrelevant. "The 'hot potato rule' does not distinguish circumstances in which counsel drops a client to represent a new client, from the circumstances present here. Rather, the doctrine is grounded in an attorney's undivided duty of loyalty, which was unquestionably breached by [Doniger Burroughs] simultaneously representing adverse clients." *W. Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F. Supp. 3d 1074, 1085 (C.D. Cal. 2015).

Indeed, an attorney-client relationship does not end until "the client actually has or reasonably should have no expectation that the attorney will provide further legal services." *Gonzalez v. Kalu*, 140 Cal.App.4th 21, 30-31 (2006). Prior to

Doniger Burroughs' belated attempt in the July 13 Email to drop Mimi Chica in favor of Plaintiff Standard Fabrics, Mimi Chica had no reason to expect that its attorney would not continue to provide legal services. (Spoleti Decl., ¶¶ 14-15.)

Just last year, in granting a motion to disqualify counsel, this Court noted that the "hot potato" rule "prevents attorneys from picking up all the clients they can and then dropping the less favorable ones as soon as conflicts appear." *State Comp. Ins. Fund v. Drobot*, 192 F. Supp. 3d 1080, 1114-15 (C.D. Cal. 2016). Unfortunately, that is exactly what Doniger Burroughs attempted to do here – discard Mimi Chica like yesterday's newspaper.  The law sees through such tactics, and rightfully does not allow them.

**D.      Even If Mimi Chica Is Considered a Former Client, Disqualification Is Mandatory Because Doniger Burroughs's Work on Behalf of Mimi Chica Substantially Relates to the Central Issues in This Case**

Even if Mimi Chica is considered to be a former client of Doniger Burroughs, instead of a current client, the firm remains subject to mandatory disqualification.   In addition to prohibiting the concurrent representation of adverse clients regardless of the subject matter of the representation, California law also forbids attorneys from representing a client adverse to a former client without a waiver where "by reason of the representation of the . . . former client, the member has obtained confidential information material to" its representation of the current client. Cal. R. Prof. Conduct 3-310(E).  This rule exists "to protect the confidential relationship . . . between attorney and client, a relationship which continues after the formal relationship ends." *Henriksen v. Great Am. Sav. & Loan*, 11 Cal.App.4th 109, 113 (1992). As the "fiduciary nature of that relationship requires the application of strict standards[,] . . .a former client may seek to disqualify [an] attorney with its confidential information from representing an adverse party." *Id*.

It is axiomatic that an attorney must avoid even the appearance of a conflict of interest. *See Trone v. Smith*, 621 F.2d 994, 1000 (9th Cir. 1980). The Court may disqualify an attorney from representation where the former representation is "substantially related" to the current representation. *Id*. Importantly, in seeking disqualification, the former client need not prove that confidences were actually imparted to the prior attorney. *Id*. at 999. As set forth in *Trone*:

> [T]he underlying concern is the possibility, or appearance of the possibility,that the attorney may have received confidential information during the prior representation that would be relevant to the subsequent matter in which disqualification is sought. The test does not require the former client to show that actual confidences were disclosed. That inquiry would be improper as requiring the very disclosure the rule is intended to protect. The inquiry is for this reason restricted to the scope of the representation engaged in by the attorney. It is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification. *Id*., at 999.

Instead, courts employ a presumption of a substantial relationship "if there is a reasonable probability that confidences were disclosed which could be used against the client in later, adverse representation." *Id*. at 998.

To avoid subjective inquiries into privileged matters in order to determine precisely what information was conveyed in cases like this, California has adopted a bright-line rule that conclusively presumes an attorney received confidential information where the present and former representations have a "substantial relationship." *Elan Transdermal*, 809 F.Supp. at 1385, 1389-91; *Henriksen*, 11 Cal.App.4th at 114; *H.F. Ahmanson & Co. v. Salomon Bros., Inc*., 229 Cal.App.3d 1445, 1452 (1999).   Successive representations are "substantially related" when the evidence before the trial court supports a rational conclusion

that the information material to the evaluation, prosecution, settlement, or accomplishment of the former representation, given its factual and legal issues, is also material to the evaluation, prosecution, settlement, or accomplishment of the current representation, given its factual and legal issues. *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal.App.4th 698, 713 (2003). Where the "substantial relationship" test is met, the former attorney is automatically disqualified, and "the disqualification extends vicariously to the entire firm." *Flatt*, 9 Cal.4th at 283. Disqualification is required even if the specific attorneys who provided the substantially related legal advice to the former client have left the firm. *Elan Transdermal*, 809 F.Supp. at 1385, 1389-91.

On these facts, there can be no dispute that Doniger Burroughs's work for Mimi Chica substantially relates to Doniger Burroughs's representation of Plaintiff Standard Fabrics in this case. Under California law, no remedy short of disqualification is sufficient to redress the conflict.  It thus does not matter whether Mimi Chica is considered a current or former client.  In either case, Doniger Burroughs is barred from prosecuting this lawsuit against Mimi Chica and mandatory disqualification applies.

Unfortunately, this is not the first time this Court's intervention has been required to disqualify Doniger Burroughs.  *See ITC Textile v. J.C. Penney Co.*, No. CV 12-2975-DMG (FFMx), 2013 U.S. Dist. LEXIS 198580, at *1 (C.D. Cal. Dec. 6, 2013).  In *ITC Textile*, Doniger Burroughs held a single meeting with the plaintiff's president regarding potential representation in copyright matters over two years beforehand.  *Id.* at *4-5.  ITC Textile's president shared confidential information with Doniger Burroughs for the purpose of seeking legal advice, which he received.  *Id.*  ITC Textile never formally retained Doniger Burroughs or pursued the representation after that initial meeting.  *Id.*  However, over two years later, Doniger Burroughs represented a defendant in a copyright infringement

action brought by ITC Textile.  *Id.* at *1.  This Court granted ITC Textile's motion to disqualify Doniger Burroughs, as there was a "reasonable inference that Doniger Burroughs in the course of its interaction with ITC *could have* obtained confidential information material to its current representation" and because the two representations were "substantially related."  *Id.* at *9-10.

Doniger Burroughs's actions in this case are far more egregious than in *ITC Textile*, which concerned a single meeting that did not result in formal representation.  Here, Mimi Chica consulted with Doniger Burroughs for the purpose of obtaining legal advice and representation in connection with the Counterclaim for copyright infringement and vicarious/contributory copyright infringement in the Related Case.  Doniger Burroughs not only provided this legal advice, but did so after Mimi Chica disclosed confidential information regarding Mimi Chica's business relationships and its policies regarding the development and creation of fabrics patterns.  Mimi Chica also disclosed prior instances in which it had been accused of copyright infringement, and discussed how those disputes resolved.  Mimi Chica also disclosed its financial condition to Doniger Burroughs.  Doniger Burroughs then agreed to represent Mimi Chica in the Related Case, and provided Mimi Chica with a written retainer agreement, which Mimi Chica signed.  Then, two weeks later, after acknowledging that an "impermissible conflict of interest" existed relative to Doniger Burroughs's concurrent representation of Mimi Chica and Standard Fabrics, the law firm unilaterally attempted to fire Mimi Chica as its client.

Just as in *ITC Textile*, not only "could have" Doniger Burroughs obtained confidential information in the Related Case that is material to the instant case, it actually did obtain such information.  Absent the intervention of this Court, there is nothing to prevent Doniger Burroughs from adversely using the confidential information it obtained from Mimi Chica in the Related Case against Mimi Chica

in this case.  Likewise, there is no doubt that these two matters are substantially related – they are both claims from direct and secondary copyright infringement against Mimi Chica based on the alleged copying of a fabric pattern.  Indeed, both matters are currently pending before this Court.  The law necessitates the speedy disqualification of Doniger Burroughs from this matter.

### E.    Mimi Chica Did Not Provide its Informed Written Consent to Waive the Current Conflict

Doniger Burroughs was required to obtain the informed, written consent of both Mimi Chica and Plaintiff Standard Fabrics in order to continue prosecuting this lawsuit.  *See Visa U.S.A., Inc. v. First Data Corp.*, 241 F.Supp.2d 1100, 1106 (N.D. Cal. 2003); Cal. R. Prof. Conduct 3-310(C), (E). Absent this informed, written consent, Doniger Burroughs was obligated to withdraw from its representation of Plaintiff Standard Fabrics in this lawsuit.  Doniger Burroughs failed to do either of these things.  Instead, it kicked Mimi Chica to the curb like an unwanted child.

### F.    The Balancing of Interests Confirms That Disqualification Is Appropriate in This Case

Where, as here, the *per se* disqualification rule applies, there can be no balancing of interests. Even if the competing interests are considered in this case, however, it is clear that Doninger Burroughs must be disqualified. The issue of disqualification implicates a conflict between the client's right to counsel of its choice and the need to maintain ethical standards of professional responsibility. *See, e.g.*, *Beltran v. Avon Prods., Inc.*, 867 F.Supp.2d 1068, 1076-77 (C.D. Cal. 2012). In resolving a motion to disqualify counsel, a district court must balance "a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on the client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion" against "the

need to maintain ethical standards of professional responsibility." *Burnett v. Rowzee*, No. SACV07-641 DOC (ANX), 2007 WL 2767936, at *3 (C.D. Cal. Aug. 13, 2007).    "However, these broad disqualification principles give way to narrower, more specific rules in the case of attorney-client conflicts." *White v. Experian Info. Solutions*, 993 F.Supp.2d at 1162.    Ultimately, the court's "paramount concern must be to preserve the public trust in the scrupulous administration of justice and the integrity of the bar." *Id.* at 1166. Thus, when balancing these competing interests, the "right to counsel of one's choosing must yield to considerations of ethics that run to the very integrity of our judicial process." *Baytree Capital Assocs., LLC*, 2008 WL 3891226, at *6 (C.D. Cal. 2008) (internal quotation marks omitted); *Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp.*, 36 Cal.App.4th 1832, 1838 (1995).

Here, the unfortunate reality is that the ethical considerations outweigh any cost or inconvenience to Plaintiff Standard Fabrics. Doniger Burroughs has a conflict between concurrent clients that it failed to identify in a timely manner, in which time it undertake the representation of Mimi Chica in a substantially related copyright infringement matter pending before this very Court.   The *per se* disqualification rule applies. It also is imperative that Doniger Burroughs not be rewarded for its error. It would be profoundly unfair to Mimi Chica to allow Doniger Burroughs to continue to represent Plaintiff Standard Fabrics in a lucrative litigation against its other client Mimi Chica. *See Truck Ins. Exch*., 6 Cal.App.4th at 1059 (disqualification is based on the premise that "courts should not allow a law firm to profit from a conflict of interest which it created").

Critically, in order to prosecute the case for Plaintiff Standard Fabrics, Doniger Burroughs will necessarily be required to depose and cross-examine its client Mimi Chica. In *Jun Ki Kim v. True Church Members of Holy Hill Community Church*, 236 Cal. App. 4th 1435 (2015), the California Court of

Appeal held unequivocally that: "cross-examining a former client results in an 'actual conflict' prohibited under rule 3–310." *Id.* at 532. The court observed that it could not allow a firm to represent one client while adversely cross-examining another: "'The spectacle of an attorney skewering her own client on the witness stand in the interest of defending another client demeans the integrity of the legal profession and undermines confidence in the attorney-client relationship.'" *Id.* (quoting *Hernandez v. Paicius*, 109 Cal. App. 4th 452 (2003), *disapproved on other grounds in People v. Freeman*, 47 Cal. App. 4th 993 (2010) (disapproving only of the Court of Appeal's disqualification of the trial judge for anti-immigrant bias).

In *Hernandez*, the Court of Appeal mandated a mistrial after it became apparent at trial that a material witness in the medical malpractice case had also been represented by the defendant's counsel. 109 Cal. App. 4th at 467-468. The Court of Appeal concluded that defense counsel had a duty of loyalty to the doctor witness, and was conflicted between the duty to prosecute the case and undermine the witness and the duty of loyalty to its doctor witness. *Id.* at 465-466. The Court of Appeal held that the court should have disqualified the firm, referred the matter to the State Bar, and ordered a mistrial, despite the fact that the entire case had already been tried to a jury.[1] *Id.* at 468.

Courts in other jurisdictions have also held that disqualification is warranted when a lawyer must cross-examine his own client, choose not to, or

---

[1] The possibility of a post-appeal mistrial as was ordered in *Hernandez v. Paicius*, is a severe risk that Mimi Chica seeks to avoid. This case is expensive, taxing professionally, and it would not be in Mimi Chica's benefit to be aware of this significant conflict, only to have an entire trial or dipositive rulings disturbed based on the potential need to re-try the entire case. The prospect of trying this case to a jury only to have it result in a mistrial is a genuine prospect absent the disqualification of Doniger Burroughs.

limit the cross-examination, thus impairing counsel's advocacy. *See, e.g., U.S. v. Cline*, 2013 WL 215644 (W.D. Va. Apr. 19, 2013) (citing various cases).

This Court has strongly doubted that a client could ever intelligently consent to being deposed or cross-examined in a way that would adversely affect the client interests.   *State Comp. Ins. Fund*, 192 F. Supp. 3d at 1113.  "Case law suggests that a lawyer cannot literally put a conflict of interest on the stand by cross-examining one client against her interests to support another client's interests." *Id.*

## V.   **CONCLUSION**

"In the relationship with the client, the lawyer is required above all to demonstrate loyalty." Geoffrey C. Hazard, Jr., *Triangular Lawyer Relationships: An Exploratory Analysis*, 1 Geo. J. Legal Ethics 15, 21 (1987).  It is this duty of loyalty that now prevents Doniger Burroughs from suing its own client in this case.

Even today, law remains a profession, not simply a business. Doniger Burroughs owes Mimi Chica the principal duties of our profession: loyalty and confidentiality.   By mishandling the conflicts of interest created by its own actions, Doniger Burroughs has subrogated those duties to other interests.  Mimi Chica respectfully requests that the Court grant its Motion and disqualify Doniger Burroughs from prosecuting this action against it.

Dated:  November 21, 2017          FREEDMAN + TAITELMAN, LLP


                                    /s/ *Sean M. Hardy*
                                   Sean M. Hardy
                                   *Attorneys for Defendants,*
                                   NORDSTROM, INC. and
                                   MIMI CHICA